Commonwealth *v.* Conner, Appellant.

Argued May 25, 1971; reargued November 21, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POME-ROY, NIX and MANDERINO, JJ.

334

*John J. Krafsig, Jr.,* for appellant.

*Jerome T. Foerster* and *Marion E. MacIntyre,* Assistant District Attorneys, with them *LeRoy S. Zimmerman,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, May 23, 1973:

On January 24, 1968, appellant Conner was adjudged guilty, by a jury, of the unlawful possession of a firearm. Uniform Firearms Act, Act of June 24, 1939, P. L. 872, §628, as amended, 18 P.S. §4628. Posttrial motions for a new trial and in arrest of judgment were denied. An appeal to the Superior Court resulted in a per curiam order of affirmance, with two judges dissenting. *Commonwealth v. Conner,* 217 Pa. Superior Ct. 85, 266 A. 2d 784 (1970).[1] This Court granted allocatur. We now reverse and remand for a new trial.

Appellant, on this appeal, challenges as error the suppression court's refusal to grant, after an evidentiary hearing, appellant's timely filed pretrial motion

---

[1] Judge HOFFMAN filed a dissenting opinion, in which Judge CERCONE joined.

to suppress the gun.[2] Specifically, Conner avers that the suppression court erred in two respects: (1) by allowing sworn oral testimony, given before the alderman (magistrate), to supplement the written affidavit; and (2) by sustaining the existence of probable cause for the issuance of the warrant, where neither the credibility of the informants nor the reliability of their information was established before the alderman.

Appellant cannot prevail on his first contention. As this Court recently stated in *Commonwealth v. Milliken*, 450 Pa. 310, 314, 315, 300 A. 2d 78, 81 (1973): *"Despite the obvious desirability of having all the information before the magistrate in writing, we are not persuaded that the affiant's sworn oral testimony may not supplement his written affidavit and together supply the constitutional basis for the issuance of a search warrant.* Appellant has been unable to cite any authority in support of his position and indeed the existing case law is to the contrary. See, e.g., Boyer v. Arizona, 455 F. 2d 804 (9th Cir. 1972); Miller v. Sigler, 353 F. 2d 424 (8th Cir. 1965); Sparks v. United States, 90 F. 2d 61 (6th Cir. 1937); Commonwealth v. Crawley, 209 Pa. Superior Ct. 70, 223 A. 2d 885 (1966), Aff'd. 432 Pa. 627, 247 A. 2d 226 (1968). In the absence of any constitutional or decisional authority or procedural rule making impermissible the procedure here employed, appellant's claim for relief on this asserted ground must be rejected. In doing so we nevertheless express our preference for reducing to writing in some acceptable manner sworn oral testimony offered in support of the issuance of the search warrant.

"We shall therefore, *in exercise of our supervisory powers, formulate by rule of Court appropriate proce-*

---

[2] Appellant also challenges the validity of §4628 of the Uniform Firearms Act and alleges numerous other trial errors. However, in view of our disposition we need not decide these issues.

*dural requirements of a sufficient written record made contemporaneously with the issuance of search warrants. Because this issue is not one of constitutional proportions, the rule will be wholly prospective and thus not applicable to the case at bar."* (Emphasis added) (Footnotes omitted). See also *Commonwealth v. Simmons,* 450 Pa. 624, 301 A. 2d 819 (1973). The Third Circuit on April 16, 1973, in *United States ex rel. Gaugler v. Brierly,* 477 F. 2d 516 (3d Cir. 1973), decided precisely as did this Court in *Milliken* (citing *Milliken* with approval), that "[t]he Fourth Amendment does *not* require that a sworn statement in support of an application for a search warrant . . . be reduced to writing." *Gaugler,* supra at 522, Pennsylvania R. Crim. P. 2003, mandated by *Milliken,* supra, was adopted on March 28, 1973, and is effective for all warrants issued sixty days *after* the Rule's adoptive date. Accordingly, appellant's first claim must be decided adversely to him.

As to appellant's second argument that the "two prong" reliability test of *Aguilar v. Texas,* 378 U.S. 108, 84 S. Ct. 1509 (1964), was not met, we agree.[3]

---

[3] However, in reaching our determination, we are mindful of the Supreme Court's admonition in *United States v. Ventresca,* 380 U.S. 102, 108, 85 S. Ct. 741, 746 (1965) that: ". . . the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a common sense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting."

"Although an affidavit may be based on hearsay information and need not reflect the direct personal observation of the affiant, Jones v. United States, 362 U.S. 257, 80 S. Ct. 725, 4 L. Ed. 2d 697, the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, see Rugendorf v. United States, 376 U.S. 528, 84 S. Ct. 825, was 'credible' or his information 'reliable.' " Id. at 114, 84 S. Ct. at 1514 (footnote omitted).

As the Commonwealth properly concedes, the facts contained in the written search warrant affidavit are patently insufficient to establish the existence of probable cause for a search.[4] *Spinelli v. United States,* 393 U.S. 410, 89 S. Ct. 584 (1969) ; *Aguilar v. Texas,* 378 U.S. 108, 84 S. Ct. 1509 (1964). See also *Commonwealth v. Simmons,* supra. However, in addition to the sparse information contained in the written affidavit, additional oral information was purportedly conveyed to the alderman by the affiant-officer. Although the issuing alderman denied, at the suppression hearing, having been given any supplemental facts concerning the reliability of the informants (or the credibility of

---

[4] The probable cause segment of the written affidavit submitted to the alderman (alderman in Harrisburg are authorized to issue warrants in the same manner as are magistrates) was obviously constitutionally deficient: ". . . the FACTS AND CIRCUMSTANCES tending to establish [the police officer's] belief that the [firearm is] situated at and in the [appellant's] vehicle are (inter alia) as follows: That on or about the      day of      , 196  that witness [sic] have reported the weapons are carried by subject in the vehicle, a red Chevrolet Sedan, Bearing Maryland Registration No. FY6-848."

their information),[5] the affiant-officer testified that he orally advised the alderman: ". . . that during the course of an investigation which I was conducting I was informed by witnesses during that investigation that the subject, Mr. Conner, did carry a weapon in his car; that Mr. Conner had made statements to these witnesses to the effect that he did carry a weapon in his car and that the police were too stupid to do anything about it. One of the witnesses had related the story to me which I related to Mr. Demma whereby Mr. Conner had made the statement that a policeman had stopped him while he was driving his car and he had a pistol under the seat of his car, and that the police officer was too stupid to do anything about it, he was so smart that he could not be caught. . . . Q. Sergeant Regan, will you indicate—will you say whether or not you indicated to the Alderman whether or not your source of information had actually seen the defendant with the weapon? A. Yes, sir, they had seen him with weapons. Q. Did you indicate that to the Alderman? A. Yes, sir, I did. And also—Q. Go ahead. A. Also during this time, I told the Alderman that I knew the defendant, and that there was a prior history of having carried firearms."

It is clear that the above noted testimonial allegations, even when read in conjunction with the defective

---

[5] The alderman testified at the suppression hearing as follows: "A. My recollection is that he [the affiant-officer] told me that he had reason to believe—he had information that there was a gun in this car from reliable sources. Q. Now, do you recall whether or not he told you who the reliable sources were? A. No. Q. Well, when you say no, you don't recall or he didn't tell you? A. I don't think I asked him. Q. Do you recall whether or not he told you anything about the reliable sources, that is, with respect to why he thought they were reliable? A. No, he didn't go into detail, except to say he had reliable information that there was a gun in the car."

written affidavit, are not sufficient to validate the issuance of the warrant. Probable cause was not established. At no time was the alderman informed of "some of the underlying circumstances from which the officer concluded that the informant[s] . . . [were] 'credible' or . . . [their] information 'reliable.' " *Aguilar*, supra at 114, 84 S. Ct. at 1514. The second-hand assertions of the affiant that appellant "carried a gun in his car" were impossible of review by the alderman—any facts tending to show the reliability of the informants and the credibility of their information were absent from the officer's statement. In sum, there was absolutely no showing made before the alderman that the informants were reliable. At best, the alderman should have concluded that he was relying on nothing ". . . more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." *Spinelli*, supra at 416, 89 S. Ct. at 589.

Furthermore, the affiant's mere conclusion that appellant had "a prior history of having carried firearms" is nothing ". . . but a bald and unilluminating assertion of suspicion that is entitled to no weight in appraising the magistrate's [alderman's] decision." *Spinelli*, supra at 414, 89 S. Ct. at 588. This is especially true where, as here, the affiant never identified the source of his information that appellant had a past history of carrying firearms. The affiant-officer's statement, accordingly, should not have been considered in determining whether probable cause existed.

The search warrant is defective not only for the above reasons, but also because the alderman was not supplied a time-frame upon which to ascertain *when* the affiant gained his information from his informants, *when* the informants themselves obtained the information they allegedly had, and if probable cause *present-*

*ly* existed to believe, that at the time the warrant was issued, appellant was keeping a firearm in his automobile. As this Court only recently stated: "Although the information supplied the magistrate '. . . must be tested with a commonsense, nontechnical, ungrudging, and positive attitude, . . .', Rosencranz v. United States, 356 F. 2d 310, 314 (1st Cir. 1966); United States v. Ventresca, 380 U.S. 102, 108-09, 85 S. Ct. 741, 746 (1965), the information *must be* sufficient '. . . to enable the magistrate independently to judge of the validity of the informant's *conclusion that the narcotics were where he said they were.*' Spinelli, supra at 413, 89 S. Ct. at 587 (emphasis added). See also Jones v. United States, 362 U.S. 257, 80 S. Ct. 725 (1960). Cf. McCants, supra [450 Pa. 245, 299 A. 2d 283 (1973)]. *Probable cause must be established at the time the warrant is issued.* See, e.g., Sgro v. United States, 287 U.S. 206, 53 S. Ct. 138 (1932); Bailey, supra; Durham v. United States, 403 F. 2d 190, 193 (9th Cir. 1968); Spinelli v. United States, 382 F. 2d 871, 897 (8th Cir. 1967) (HEANEY, J., dissenting), rev'd, 393 U.S. 410, 89 S. Ct. 584 (1969); Rosencranz, supra; Schoeneman v. United States, 317 F. 2d 173 (D.C. Cir. 1963); Commonwealth v. Shaw, 444 Pa. 110, 281 A. 2d 897 (1971); Commonwealth v. Bove, 221 Pa. Superior Ct. 345, 293 A. 2d 67 (1972). Cf. McCants, supra. '. . . [*I*]*t is manifest that the proof* [necessary to establish probable cause] *must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time.*' Sgro, supra at 210, 53 S. Ct. at 140 (emphasis added)." *Commonwealth v. Simmons,* supra at 629-30, 301 A. 2d at 822. See also cases cited therein.

Here, as in *Simmons,* in neither the affidavit nor the sworn testimony given by the affiant, was the alderman informed as to *when* appellant had maintained

a firearm in his car, or *when* the informers' statements had been made to the affiant. "Was it a year prior to the date of the affidavit, six months, three months, one week? Any selection of time on our part would be purely conjectural. So too must have been the magistrate's [alderman's] determination." *Simmons,* supra at 630, 301 A. 2d at 822.

"If we were to sustain the magistrate's determination, the issuance of search warrants would be allowed solely upon suspicion of criminal conduct, a standard far less demanding than that embodied in the Fourth Amendment. We cannot countenance such a deviation from explicit constitutional norms. 'Indeed, if the affidavit [and sworn testimony] in this case be adjudged valid, it is difficult to see how any function but that of a rubber stamp remains for [the magistrate].' Rosencranz, supra at 317. 'It is one thing to expect the magistrate to give a commonsense reading to facts set forth and to draw inferences from them. It is quite another thing to expect the magistrate to reach for external facts and to build inference upon inference in order to create a reasonable basis for his belief that a crime is *presently* being committed.' Id. at 317 (emphasis added)." *Simmons,* supra at 631, 301 A. 2d at 823.

On this record, we cannot conclude that the affidavit and sworn testimony at issue provided a sufficient basis for an independent determination by a neutral judicial officer that probable cause existed.

The judgment of sentence is reversed and a new trial granted.

Mr. Justice MANDERINO joins in this opinion and filed a concurring opinion.

Mr. Justice EAGEN concurs in the result.

CONCURRING OPINION BY MR. JUSTICE POMEROY:

I agree that appellant's motion to suppress should have been granted because the magistrate was not informed ". . . of the underlying circumstances from which the officer concluded that the informant . . . was 'credible' or his information 'reliable.'" *Aguilar v. Texas*, 378 U.S. 108, 114, 84 S. Ct. 1509, 1514 (1964) (footnote omitted), and concur in the decision of the Court on that basis.

For the reasons stated in my dissenting opinion in *Commonwealth v. Milliken*, 450 Pa. 310, 318, 300 A. 2d 78 (1973), however, I think appellant should prevail also on the first ground here advanced, viz., that the procedure which allows the suppression hearing judge to undertake to cure a defective search warrant by evidence of sworn *oral* testimony supposedly presented earlier to the issuing officer is constitutionally defective.

---

CONCURRING OPINION BY MR. JUSTICE MANDERINO:

I join in the majority opinion except that I adhere to my views expressed in *Commonwealth v. Milliken*, 450 Pa. 310, 300 A. 2d 78 (1973) that probable cause for the issuance of a warrant must be found in the affidavit executed *prior* to the issuance of the warrant.